IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ARTHUR M. KENNEDY IV,

        Plaintiff,

v.

RN DENISE VALERIUS,
NP KRISTINE LYONS,[1] and
HSU STAFF RACHEL PAFFORD,

        Defendants.

OPINION AND ORDER

22-cv-005-wmc

---

ARTHUR M. KENNEDY IV,

        Plaintiff,

v.

KAITLYN LEMERAND,
RN BONNIE ALT,
NURSE RACHEL PAFFORD and
HEALTH SERVICE UNIT SUPERVISOR
MELISSA BLOCK,

        Defendants.

22-cv-006-wmc

---

*Pro se* plaintiff Arthur Kennedy, who currently is incarcerated at Columbia Correctional Institution ("Columbia"), filed these two lawsuits under 42 U.S.C. § 1983. In Case No. 22-cv-005 (the "'005 case"), Kennedy claims that in May and June of 2021, three Columbia health care professionals failed to ensure that he received medically necessary infusion treatments in a timely fashion, in violation of his Eighth Amendment rights. Similarly, in Case No. 22-cv-006-wmc (the "'006 case"), Kennedy claims that four

---

[1] In the case caption plaintiff spelled this defendant's last name "Lyon," but throughout his complaint he spells it "Lyons." The court has used the latter spelling, but the parties should promptly notify the court if this is incorrect.

Columbia health care professionals failed to send him to the hospital for a necessary blood transfusion in a timely fashion, resulting in a loss of consciousness and emergency blood transfusion. Because these lawsuits share many of the same basic facts, the court will consolidate these lawsuits and both cases will proceed under Case No. 22-cv-005-wmc. *See* Fed. R. Civ. P. 42(a). Both complaints are ready for screening as required by 28 U.S.C. §§ 1915(e)(2), 1915A, and Kennedy has filed motions for assistance in recruiting counsel in each case. (*See* '005 dkt. #6; '006 dkt. #6.) For the reasons that follow, the court will grant Kennedy leave to proceed against two of the three named defendants in the '005 case, and against two of the defendants named in the '006 case. However, the court is denying Kennedy's motions for assistance in recruiting counsel without prejudice.

## ALLEGATIONS OF FACT[2]

### A. The '005 Case

Plaintiff Arthur Kennedy seeks to proceed against the following defendants, all of whom work at Columbia: Nurse Denise Valerius, Nurse Practitioner Kristine Lyons, and Health Services Unit ("HSU") staff member Rachel Pafford.

Kenndy alleges that he suffers from paroxysmal nocturnal hemoglobinuria ("PNH") blood disease and myelodysplastic ("MDS") blood cancer, for which he receives an infusion treatment every eight weeks. Kennedy explains that these infusions help keep his blood stable, which further helps him avoid blood transfusions. Before he arrived at Columbia, Kennedy underwent infusion treatments at Froedtert Hospital in Milwaukee, Wisconsin.

---

[2] In addressing a *pro se* litigant's complaint, the court must read the allegations generously, resolving ambiguities and drawing reasonable inference in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

2

Kennedy arrived at Columbia on May 21, 2021, at which point it appears that defendant NP Lyons reviewed Kennedy's health profile, including his infusion treatments. However, defendants Lyons and Pafford allegedly failed to arrange for him to receive his next treatment on time. On June 18, 2021, when Kennedy was supposed to undergo a treatment, he wrote to the HSU inquiring about the treatment. When Kennedy received no response, he wrote to the HSU a second time, and he received a response from defendant Valerius, stating that Columbia does not transport inmates to Froedtert. Kennedy next reached out to Columbia's security director, who told Kennedy that a transport to Froedtert would be arranged if ordered by HSU staff. Kennedy alleges that he had to wait to receive his medical treatment for four months, which caused complications with his condition, including fatigue, chest pains, shortness of breath, loss of consciousness, and the need for more frequent blood transfusions.

B. The '006 Case

In his second lawsuit, Kennedy seeks to proceed against the following four Columbia employees: Nurse Kaitlyn Lemerand, RN Bonnie Alt, Nurse Rachel Pafford and HSU Supervisor Melissa Block.

Kennedy alleges that he needs to have his blood tested every two weeks to ensure that he does not need a blood transfusion. If his blood results fall to a certain level -- a 7 or an 8 -- he needs an immediate blood transfusion. On July 26, 2021, defendant Nurse Lemerand drew Kennedy's blood and sent it for testing. Defendants Block and Lemerand allegedly learned that his blood level was at 7.1, suggesting an immediate need for a blood transfusion.

3

Kennedy alleges that defendant Pafford is responsible for setting up transportation for the blood transfusion. However, Pafford failed to arrange for that transport within a day or two after his blood results came back. After a few days, Kennedy started experiencing chest pain, dizziness, shortness of breath, loss of appetite, fatigue and weakness. He contacted the HSU, but no one arranged for him to receive a blood transfusion, and a few days later, on August 1, 2021, Kennedy passed out in his cell and was unresponsive for about 45 minutes while a cellmate screamed for help. Eventually a sergeant came to Kennedy's cell and called for emergency assistance. Kennedy was escorted to a day room in a wheelchair, where defendant Nurse Alt took Kennedy's vitals and acknowledged his blood condition. However, Alt refused to send him to the emergency room, instead telling the officers present to take Kennedy back to his cell. Back in his cell, Kennedy continued to experience pain, shortness of breath and dizziness.

The next day at approximately 3:20 p.m., Kennedy went to the HSU for his medication, and he told defendant Block about the events from the night prior. Block "seemed furious," asked why he had not been taken for a blood transfusion and ordered that he be sent to the emergency room immediately. (Compl. ('006 dkt. #1) 5.) At the hospital, Kennedy received two unit of blood, and his tests showed that his levels were "critical." (*Id.*)

OPINION

I. Screening of complaints

The court understands plaintiff to be pursuing Eighth Amendment claims against all defendants in both lawsuits. A prison official who violates the Eighth Amendment in

4

the context of a prisoner's medical treatment demonstrates "deliberate indifference" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). "Serious medical needs" include (1) life-threatening conditions or those carrying a risk of permanent serious impairment if left untreated, (2) withholding of medical care that results in needless pain and suffering, or (3) conditions that have been "diagnosed by a physician as mandating treatment." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997). "Deliberate indifference" encompasses two elements: (1) awareness on the part of officials that the prisoner needs medical treatment and (2) disregard of this risk by conscious failure to take reasonable measures. *Forbes*, 112 F.3d at 266.

Plaintiff's blood disorders present serious medical conditions, since he alleges severe symptoms associated with lack of treatment and, worse, that lack of treatment can lead to death. Plaintiff's allegations that Lyons learned about plaintiff's conditions and need for treatment, and then outright failed to schedule him for those treatments, supports an inference of deliberate. As for Pafford, although plaintiff faults this defendant for failing to schedule him for treatments, plaintiff has not alleged that Pafford was actually informed of his need for these treatments or specifically tasked with scheduling his treatments. As such, it would be unreasonable to infer that Pafford's failure to schedule those treatments exhibits deliberate indifference. Therefore, the court will not grant plaintiff leave to proceed against Pafford related to scheduling him for treatment, although the dismissal will be without prejudice to plaintiff's ability to file an amended complaint to include details about exactly what Pafford knew about plaintiff's medical conditions and treatment needs in May and June of 2021.

5

Finally, when construing plaintiff's allegations quite generously, defendant Valerius's handling of plaintiff's June 2021 inquiries about his treatment may suggest deliberate indifference. On one hand, Valerius may have simply been mistaken when she brushed off plaintiff's concern, which may suggest negligence, not deliberate indifference. *See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020) ("[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough – the prison officials' state of mind must rise to the level of deliberate indifference.") (citation omitted). Yet, it may also be reasonable to infer that Valerius knew that sending plaintiff to Froedtert was feasible and showed deliberate indifference in refusing to follow up to determine whether plaintiff's need for scheduling had fallen through the cracks. Since at this stage the court must resolve these types of ambiguities in plaintiff's favor, the court will grant plaintiff leave to proceed against Valerius.

As for plaintiff's allegations related to his need for a blood transfusion in July of 2021, the court will grant plaintiff leave to proceed against defendants Lemerand and Alt. These two defendants allegedly had reason to believe that plaintiff needed immediate medical intervention to address his blood disorders: Lemerand knew that plaintiff's blood level reached a point where a transfusion was necessary, and Alt learned that plaintiff had lost consciousness because of his conditions. Plaintiff's allegations that Lemerand failed to ensure that plaintiff received a prompt blood transfusion and that Alt refused to send plaintiff to the emergency room after he lost consciousness support inferences that both defendants consciously disregarded his serious medical condition.

As to Pafford, however, like plaintiff's need for the infusion treatment, plaintiff has not alleged facts suggesting that Pafford was aware of the results of plaintiff's blood test or

otherwise was aware of his need, or was directed to arrange for his transport for an infusion. Therefore, Pafford's apparent failure to arrange for his transport for a blood transfusion does not support an inference of deliberate indifference. Although the court will not grant plaintiff leave to proceed against Pafford on any claim, the court will dismiss the claims against her without prejudice. As such, plaintiff is free to seek leave to amend his complaint to include additional allegations related to Pafford's knowledge about his need for an infusion treatment and/or blood transfusion. If plaintiff opts to file an amended complaint, it will be subject to screening under §§ 1915(e)(2), 1915A.

Finally, plaintiff's allegations as to defendant Block do not suggest deliberate indifference. On August 2, immediately after learning that plaintiff was suffering from symptoms suggesting that he needed a blood transfusion, Block directed that he be sent to the emergency room so he could receive that needed intervention. This response was completely appropriate. Moreover, plaintiff has not alleged that Block was aware of any of the events leading up to their interaction on August 2, and plaintiff may not proceed against Block solely because of her position as supervisor. *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (rejecting § 1983 actions against individuals merely for their supervisory role of others). Therefore, since plaintiff has not otherwise alleged that Block consciously disregarded his medical needs related to his blood disorders, the court will dismiss this defendant from this case.

## II. Motions for assistance in recruiting counsel

Finally, at this time, the court is denying plaintiff's motions for assistance in recruiting counsel without prejudice to him renewing this request if and when warranted.

Although the court will accept that plaintiff has made reasonable efforts to recruit an attorney on his own, recruitment of counsel at this stage in this lawsuit is not necessary because the court is not persuaded that the legal and factual demands of this lawsuit exceed his abilities to represent himself further. *See Pruitt v. Mote,* 503 F.3d 647, 654-55 (7th Cir. 2007). This lawsuit was only just screened to proceed, and shortly this matter will be scheduled for a telephonic preliminary pretrial conference, during which Magistrate Judge Crocker will explain how this case will proceed, set the schedule, and follow up with a detailed order that memorializes the schedule and attaches this court's procedures. It is too early in this lawsuit, and volunteer counsel are too scarce a resource, for this court to conclude that plaintiff needs the assistance of counsel at this stage. Plaintiff should use the resources available to him at Columbia and review the materials he receives from this court. Then, if plaintiff finds he is still unable to meet the demands of this lawsuit without the help of an attorney, he may renew this motion.

ORDER

IT IS ORDERED that:

1) These two actions are CONSOLIDATED and will proceed under Case No. 22-cv-005-wmc.

2) Plaintiff Arthur Kennedy is GRANTED leave to proceed on Eighth Amendment deliberate indifference claims against defendants Nurse Denise Valerius, NP Kristine Lyons, Kaitlyn Lemerand and Bonnie Alt.

3) Plaintiff is DENIED leave to proceed on any other claim, and defendants Rachel Pafford and Melissa Block are DISMISSED. Defendant Pafford is dismissed without prejudice.

4) Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on defendants.

.

Under the agreement, the Department of Justice will have 60 days from the date of the Notice of Electronic Filing in this order to answer or otherwise plead to the plaintiff's complaint if it accepts service for defendants.

5) For the time being, plaintiff must send the defendants a copy of every paper or document he files with the court. Once plaintiff has learned what lawyer will be representing the defendants, he should serve the lawyer directly rather than the defendants. The court will disregard any documents submitted by plaintiff unless plaintiff shows on the court's copy that he has sent a copy to the defendants or to the defendants' attorneys.

6) Plaintiff should keep a copy of all documents for his own files. If plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

7) If plaintiff moves while this case is pending, it is plaintiff's obligation to inform the court of his new address. If he fails to do this and defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute him.

8) Plaintiff's motions for assistance in recruiting counsel ('005 dkt. #6; '006 dkt. #6) are DENIED without prejudice.

Entered this 16th day of March, 2022.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge