IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ARTHUR M. KENNEDY IV,

                        Plaintiff,                          OPINION AND ORDER

          v.                                                    22-cv-005-wmc

RN DENISE VALERIUS and
NP KRISTINE LYON,

                        Defendants.

---

ARTHUR M. KENNEDY IV,

                        Plaintiff,

          v.

                                                                22-cv-006-wmc

RN BONNIE ALT,

                        Defendants.

---

While *pro se* plaintiff Arthur Kennedy is currently incarcerated by the Wisconsin

Department of Corrections at Waupun Correctional Institution, he has been granted leave

to proceed in these consolidated lawsuits (Case Nos. 22-cv-05 & 06) under 42 U.S.C.

§ 1983, on Eighth Amendment claims that three health care professionals failed to provide

him needed medical attention during his 2021 incarceration at Columbia Correctional

Institution ("Columbia").  In the '05 case, Kennedy claims that (1) Nurse Denise Valerius

refused to send him to a hospital for a needed blood transfusion, and (2) Nurse Practitioner

Kristine Lyon failed to ensure he received needed treatment.  In the '06 case, Kennedy

claims that Nurse Bonnie Alt knew that Kennedy had lost consciousness because he had

not been sent out for a needed blood transfusion but nevertheless failed to send him to the emergency room for treatment.

Valerius and Alt are represented together, and Lyon is represented separately.  All defendants seek summary judgment on the ground that Kennedy failed to exhaust his administrative remedies as to each claim in these lawsuits.  ('05 case, dkt. ##33, 35; '06 case, dkt. ##30, 32.)  Kennedy responded substantively to these motions, and he has also filed several additional motions.  ('05 case, dkt. ##47-53; '06 case, dkt. ##44-50.)  Because Kennedy followed the exhaustion procedures available to him with respect to his claims in both lawsuits, the court will also deny defendants' motions, and will resolve Kennedy's motions, granting him limited relief with respect to one discovery-related motion.

OPINION

I.   **Exhaustion**

Prisoners may not bring a federal claim about events in prison "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  As a result, a prisoner must follow all of the prison's rules for completing the grievance process as to a claim before proceeding to federal court.  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  This includes:  (1) compliance with instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); **and** (2) filing all available appeals "in the place, and at the time, the prison administrative rules require," *Pozo*, 286 F.3d at 1025; *see also Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

This exhaustion requirement is mandatory to ensure that prison administrators are

afforded a fair opportunity to resolve a grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Because a prisoner's failure to exhaust constitutes an affirmative defense, however, *defendant* generally carries the burden of proof. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018). Specifically, defendants must show that there is no genuine dispute of material fact as to plaintiff's failure to exhaust, entitling them to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In Wisconsin, inmates must start the process by filing a complaint with an institution complaint examiner ("ICE") within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.07(2) (2018). "Each complaint may contain only one, clearly identified issue." § 310.07(5). However, if the ICE rejects a grievance for procedural reasons without addressing the merits, an inmate may appeal that rejection. § 310.10(10). If the complaint is *not* rejected, the ICE must make a recommendation to the reviewing authority, who in turn renders a decision. §§ 310.11(11), 310.12. If that decision is unfavorable, the inmate may still appeal to the corrections complaint examiner ("CCE") within ten days, unless good cause is shown for an untimely filing. § 310.13. The CCE then makes a recommendation to the Secretary of the Department of Corrections, who will take final action on the complaint. §§ 310.13, 310.14.

Kennedy filed two inmate complaints about the events between June and August of 2021:

**CCI-2021-11942**: In which Kennedy claimed that he did not receive his infusion treatment for his blood disorders on June 18, 2021. Kennedy further alleged that even

3

though he had tried to work with Lyon about scheduling his transfusions, he had still not received a response from her.  (Dkt. #31-4, at 10.)[1]  As a result, Kennedy alleges that he then wrote to the Health Services Unit ("HSU") manager, who responded that: (1) his transfusion would be scheduled but at a different facility; and (2) because he was having more issues with his blood count, he may need blood transfusions more often.  In support, Kennedy submitted communications he had with HSU staff and the security director about his transfusions.  Those communications Kennedy received were dated between June 28 and August 2, 2021.  (*Id.* at 14-20.)

The ICE's office received this inmate complaint on August 6, 2021.  On October 20, 2021, ICE Zenk rejected Kennedy's complaint because he submitted it after the 14-day deadline had passed.  Zenk also noted that the HSU had scheduled appointments for his transfusions.  Kennedy appealed this rejection to the Reviewing Authority, alleging that when he did not undergo his scheduled transfusions in June of 2021, he wrote and asked questions of the appropriate staff about his appointment, only to be told again that he had an appointment.  When that scheduled appointment also did not occur in August, Kennedy finally submitted his inmate complaint.  (*Id.* at 30.)  Even so, the Reviewing Authority accepted ICE Zenk's recommendation, agreeing without analysis that the inmate complaint was untimely.

**CCI-2021-12340:**  Kennedy also brought a separate complaint that he was not called to receive his scheduled transfusion on July 27, 2021, either, and when he asked staff why, no one responded to his complaint.  (Dkt. #31-5, at 7.)  Kennedy wrote that as

---

[1]  For ease of reference, the court cites to docket entries from the '06 case.

of the date he was filling out the complaint, he had still not been sent out for a blood transfusion, and that he feared for his safety.  Kennedy added that on the evening of August 1, 2021, his cellmate found him unresponsive, and when defendant Alt learned about what happened, she took his vitals but did not send him to the emergency room.

The ICE's office received this inmate complaint on August 13.  On October 20 -- the same day he rejected CCI-2021-11942 -- Zenk rejected this inmate complaint on the ground that this second inmate complaint raising concerns about denial of medical care on July 27, 2021, had already been addressed in CCI-2021-11942.  Kennedy appealed the rejection to the Reviewing Authority, stating that he did not understand why his complaint had been rejected.  The Reviewing Authority agreed with ICE Zenk's ground for rejection.

Defendants now seek summary judgment because Kenney's inmate complaints were rejected.  However, the ICE and Reviewing Authority's review of Kennedy's complaint was cursory and narrow, construing his complaint as concerning only a single, missed transfusion in June 2021, despite Kennedy detailing his attempts to get a transfusion in July and August, as well as working more generally with health care professionals and other staff to ensure timely transfusions.  Plus, he submitted evidence of those communications, including the last that Kennedy received back, dated August 3, 2021.  Nevertheless, ICE Zenk did not account for Kennedy's reason for delaying the inmate complaint, much less address the fact that Kennedy's concern was ongoing when he filed it in August.  Nor did the Reviewing Authority.

"[P]roper exhaustion occurs when a plaintiff files an appropriate grievance through the proper channels, having realized that he would not be able to resolve his grievance with

5

the medical staff informally, even if it's more than 14 days after the earliest instance of the denial of medical treatment." *Nieto v. Dittman*, No. 16-cv-163-jdp, 2017 WL 3610571, at *2 (W.D. Wis. Aug. 22, 2017); *see also Edwards v. Schrubbe*, 807 F. Supp. 2d 809, 812 (E.D. Wis. 2011) (inmate complaint not untimely despite being submitted more than 14 days after first denial of medical treatment, since plaintiff filed "once he realized that he would not be able to resolve his grievance with the medical staff informally").   Therefore, defendants Valerius and Lyon have simply not proven that Kennedy failed to exhaust his administrative remedies with respect to his claims against them, and their motions for summary judgment in the '05 case on the basis of exhaustion must be denied.

As for Kennedy's claim against Alt in the '06 case, the outcome is the same. Kennedy explicitly cited Alt's failure to provide treatment on August 1 in CCI-2021-12340.  While that inmate complaint was rejected as already resolved, the issues Kennedy raised in CCI-2021-11942 were also ongoing, and in any event, his allegation against Nurse Alt included in CCI-2021-12340 occurred *after* he submitted CCI-2021-11942.  Thus, Kennedy's complaint in CCI-2021-12340 raised a new and distinct denial.  Regardless, because Kennedy sought review of a distinct, rejected complaint over an issue that was ongoing, Kennedy followed all of the procedures available to him to preserve his claim against Alt.  Therefore, the court must deny Alt's request for summary judgment as well.

## II.    Kennedy's motions

After the parties completed briefing on defendants' motion for summary judgment, Kennedy filed seven motions of his own, which the court will deny with one narrow

exception.   To begin, Kennedy's motion to dismiss defendants' motion for summary judgment (dkt. #48) was unnecessary and obviously is now moot.

Kennedy also filed two, separate motions asking the court to assist him in obtaining a response to interrogatories.  (Dkt. ##47, 51.)  Defendants did not respond to those interrogatories timely, but instead wrote (quite mistakenly) that discovery was stayed while their exhaustion motions for summary judgment were pending.  Not only did the court *not* stay discovery while this motion was pending, but a simple discovery motion to the Magistrate Judge would have quickly disabused defendants of that notion.  At this point, however, the court will simply grant these motions and give defendants 15 days from this order to respond in writing to Kennedy's interrogatories.  If not, Kennedy should renew his motions and seek an appropriate monetary sanction for having to do so.

That said, on the last page of his first motion related to discovery, Kennedy also lists a set of requests for admissions to which he asked defendant Alt to respond.  (*See* dkt. #47, at 3.)  Kennedy cannot serve discovery requests on defendants by filing them in this case; instead, he must serve defendants as provided by the Federal Rules of Civil Procedure. So, to the extent Kennedy is asking for the court's assistance in having Alt respond to those requests for admission, that motion is denied with prejudice.  Relatedly, Kennedy seeks to amend or correct one of the requests to admit directed at Alt.  (Dkt. #50.)  Because Kennedy has not properly served those requests for admissions on Alt, this motion will be denied, although he may still do so in his amended, properly served requests.

Kennedy next seeks to "unconsolidated" these cases if the court dismisses his claims in the '05 case.  (Dkt. #49.)  That motion will also be denied as moot.

Finally, Kennedy has filed two motions seeking summary judgment on the merits of his claims in these lawsuits. (Dkt. ##52, 53.) These motions will be denied without prejudice as premature; Kennedy is, of course, free to re-file them by the April 21, 2023, dispositive motion deadline, provided that he follows the court's summary judgment procedures.

## ORDER

IT IS ORDERED that:

1) Defendants' motions for summary judgment ('05 case, dkt. ##33, 35; '06 case, dkt. ##30, 32) are DENIED.

2) Plaintiff Arthur Kennedy's motions ('05 case, dkt. ##47-53; '06 case, dkt. ##44-50) are DENIED and GRANTED IN PART as provided above.

3) Defendant Lyon's motion to strike (dkt. #54) is DENIED as moot.

Entered this 13th day of February, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge